Kimberly S. HAM, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 70A01–0310–CR–401.

Court of Appeals of Indiana.

June 30, 2004.

Brady J. Lory, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Kimberly S. Ham appeals her conviction for Operating a Vehicle While Intoxicated,[1] a class C misde-

---

1. Ind.Code § 9–30–5–2(a).

meanor. Specifically, Ham argues that the conviction may not stand because the trial court erred in giving a final instruction which provided that "a defendant's refusal to submit to a chemical test may be considered as evidence of intoxication." Appellant's App. p. 124. Ham asserts that the instruction was an incorrect statement of the law and that it unduly emphasized one evidentiary fact pertaining to her guilt regarding the charged offense.

We conclude that the trial court erred in tendering this instruction to the jury, and we thus admonish our trial courts to refrain from giving this type of instruction in the future. However, in light of the overwhelming evidence presented at trial establishing Ham's guilt, we hold that the instruction constituted harmless error. Therefore, we affirm the judgment of the trial court.

### FACTS

On January 18, 2002, Officer Brad Hatfield of the Rushville Police Department was on routine patrol. At some point, he observed Ham driving a red Pontiac Firebird traveling to the left of the centerline. Officer Hatfield then began following Ham and saw her drift to the left of the centerline on several more occasions. He also noticed that Ham's seatbelt was not buckled.

As a result, Officer Hatfield stopped Ham's vehicle. When he approached, he noticed a strong odor of alcohol emanating from Ham's car. After telling Ham why he stopped her, Officer Hatfield asked for her driver's license and registration. Ham fumbled through her purse before she was finally able to produce those documents. Additionally, when Ham exited her vehicle, she stumbled and almost fell back onto her car. Officer Hatfield then offered Ham a preliminary breath test which she refused to take. Ham was also given various field sobriety tests that she either failed or

refused to perform. During this interaction, Officer Hatfield noticed that Ham's eyes were glassy and bloodshot and her speech was broken and slurred. Upon reading the implied consent law to Ham in accordance with Indiana Code section 9–30–6–7, Officer Hatfield asked her whether she would submit to a chemical test. Ham refused and, as a consequence, Officer Hatfield arrested Ham and transported her to the county jail.

At the jail, Ham was offered other field sobriety tests, but she refused. Officer Hatfield also reread the implied consent law to Ham, and she again refused to submit to a chemical test. The State then charged Ham with driving while intoxicated as a class A misdemeanor, and the case was tried to a jury on May 13, 2003. Following the presentation of the evidence, the trial court gave the final instruction indicating that Ham's refusal to submit to a chemical test could be considered evidence of her intoxication. Ham objected to the giving of the instruction, arguing that it highlighted only a "specific piece of evidence," and that the instruction "was an incorrect statement of the law" in accordance with Indiana Code section 9–30–6–3(b). Tr. p. 115–16, 121. In the end, Ham was found guilty of the offense as a class C misdemeanor. She now appeals.

### DISCUSSION AND DECISION

■ In addressing Ham's argument that the trial court's instruction was erroneous, we note that instructing the jury lies within the sole discretion of the trial court. *Carter v. State,* 766 N.E.2d 377, 382 (Ind.2002). We will reverse the trial court's decision regarding jury instructions only for an abuse of discretion. *Forte v. State,* 759 N.E.2d 206, 209 (Ind.2001). Additionally, jury instructions are to be considered as a whole and in reference to each other, and this court will not reverse the

trial court's decision as an abuse of discretion unless the instructions as a whole mislead the jury as to the law of the case. *Carter*, 766 N.E.2d at 382. We also note that instructions that unnecessarily emphasize one particular evidentiary fact, witness or phase of the case have long been disapproved. *Ludy v. State*, 784 N.E.2d 459, 461 (Ind.2003). Additionally, the purpose of a jury instruction "is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." *Dill v. State*, 741 N.E.2d 1230, 1232 (Ind.2001) (quoting *Chandler v. State*, 581 N.E.2d 1233, 1236 (Ind.1991)).

 Finally, when evaluating whether a trial court erred in refusing or giving an instruction, the court on appeal looks at the following factors: (1) whether the tendered instruction correctly states the law; (2) whether there is evidence in the record to support giving the instruction; and (3) whether the substance of the instruction is covered by other instructions. *Fields v. State*, 679 N.E.2d 1315, 1322 (Ind.1997). To obtain a reversal, a defendant must affirmatively demonstrate that the instruction error prejudiced his substantial rights. *Hall v. State*, 769 N.E.2d 250, 253–54 (Ind. Ct.App.2002).

 Turning to the merits here, Ham directs us to this court's opinion in *Stoltmann v. State*, 793 N.E.2d 275, 280–81 (Ind.Ct.App.2003), *trans. denied*, in support of her argument for reversal. In *Stoltmann*, a panel of this court determined that an instruction providing that "a defendant's refusal to submit to a chemical test may be considered as evidence of the defendant's *guilt*" was error. *Id.* at 280 (emphasis added). We reasoned that while the defendant's refusal to take the chemical breath test was admissible evidence in accordance with Indiana Code section 9–30–6–3(b), the challenged instruction unduly emphasized the importance of the defendant's refusal to take the test. We also noted that the particular instruction "confuses and misleads the jury by permitting it to infer that the refusal is sufficient to establish all the elements of the offense of operating a vehicle while intoxicated, when, at best, it establishes only that he refused to take the test." *Id.* at 280; *but see Luckhart v. State*, 780 N.E.2d 1165, 1168 (Ind.Ct.App.2003) (holding that because there was no dispute that the defendant had been driving when he refused to take the test, and it is not likely that the jury was confused about the proper element of the offense to which the evidence pertained, there was no error in giving this type of instruction); *Hurt v. State*, 553 N.E.2d 1243, 1249 (Ind.Ct.App. 1990) (holding that the use of the word "guilt," taken in the context of all the instructions, was not confusing, nor was the instruction otherwise impermissible).

We did not reverse Stoltmann's conviction, however, because he admitted to the arresting officer that he had operated the vehicle and was intoxicated. *Stoltmann*, 793 N.E.2d at 281. In light of this evidence, the panel in *Stoltmann* concluded that his conviction for the offense was clearly sustained by the evidence "and the jury could not have properly found otherwise. [Thus], the giving of the instruction was harmless error." *Id.*

Also in *Stoltmann*, the panel quoted from *Luckhart*, where it was observed that an instruction indicating that a refusal to submit to a chemical test may be considered evidence of guilt:

> In this case, as in *Hurt*, the trial court's instructions repeatedly referenced the issue of Luckhart's guilt, and expressly set forth the elements that had to be proved to establish Luckhart's guilt. *It might have been more accurate for the trial court to have instructed the jury*

*that Luckhart's refusal to take a chemical breath test was evidence of his intoxication rather than evidence of his guilt of the offense of driving while intoxicated,* as there is no connection between his refusal to take the test and his operation of a vehicle.

*Id.* at 280 (quoting *Luckhart,* 780 N.E.2d at 1168) (emphasis added).

While at least two panels of this court have tacitly approved the giving of the instruction that the trial court tendered in this case, we decline to follow the trail that has been blazed by those several colleagues. That is, we disagree with the notion that it is proper to instruct that the refusal to take the test is evidence of either intoxication *or* guilt. It is our view that the instruction misstates the law and it similarly has the high potential of misleading or confusing the jury.

We acknowledge that Indiana Code section 9–30–6–3(b) does permit a defendant's refusal to submit to a chemical test to be admitted into evidence. However, it is apparent that such evidence is probative only to explain to the jury why there were no chemical test results. We again emphasize that the defendant's refusal to submit to the test is simply *not* probative of his guilt or intoxication, and we fail to see any nexus between a defendant's right to refuse a chemical test for intoxication and the fact that he might be in such a condition. Put another way, an instruction given to the jury like the one here bears no relationship upon the determination as to whether a defendant may be intoxicated. At best, the admission of such evidence only establishes that the defendant refused to take the test. Nowhere in Indiana Code section 9–30–6–3 is it declared that the State is entitled to a jury instruction providing that a defendant's refusal to take a chemical test may be evidence of intoxication. Moreover, during an investigation

where driving while intoxicated is at issue, the defendant is advised that his or her refusal to submit to a chemical test will result in the suspension of driving privileges for one year. I.C. § 9–30–6–7; I.C. § 9–30–6–9. The defendant is not advised, however, that the fact finder will be permitted to infer that a state of intoxication can be premised on the decision to decline a breath test.

We also note that in *Dill,* our supreme court condemned the giving of the following instruction regarding a defendant's flight after the commission of a criminal offense:

> Flight of a person immediately after the commission of a crime and other evidence of actions calculated to hide a crime, though not proof of guilty, are evidence of consciousness of guilt and are circumstances which may be considered by you in connection with all other evidence.[2]

In rejecting the propriety of this particular instruction, the *Dill* court determined that it was confusing, it unnecessarily emphasized certain evidence, and it had a great potential to mislead the jury. *Dill,* 741 N.E.2d at 1232. More specifically, our supreme court observed that the "instruction is inherently contradictory because it simultaneously informs the jury that a person's flight after the commission of a crime is not proof of guilt but yet is evidence of consciousness of guilt and may be considered." *Id.*

Similarly, we note that the instruction tendered here has a significant potential to mislead the jury. The instruction that was given emphasizes Ham's decision to decline a chemical test and tells the jury to assign that same decision as evidence of intoxication. To be sure, intoxication is a necessary element that must be proven by

**2.** The text of the instruction is set forth in *Dill v. State,* 727 N.E.2d 22, 25 (Ind.Ct.App.2000).

the State beyond a reasonable doubt in a charge of operating a vehicle while intoxicated. Permitting an instruction that leads the jury to believe the burden has been met simply cannot be permitted. *See Pritchard v. State*, 248 Ind. 566, 230 N.E.2d 416, 421 (1967) (recognizing that a mandatory instruction which binds the minds and consciences of the jury to return a verdict of guilty upon finding certain facts, invades the constitutional province of the jury). As a result, in light of the reasons set forth above, we condemn the giving of this instruction and find it to be error.[3]

■ We note, however, that errors on the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise. *Crawford v. State*, 550 N.E.2d 759, 762 (Ind. 1990). An instruction error will result in reversal when the reviewing court "cannot say with complete confidence" that a reasonable jury would have rendered a guilty verdict had the instruction not been given. *White v. State*, 675 N.E.2d 345, 349 (Ind. Ct.App.1996), *trans. denied.*

Here, the evidence demonstrated that Ham twice refused to take the offered chemical test. Tr. p. 78–79. Officer Hatfield also saw Ham driving the vehicle across the center line on a number of occasions. He also testified that Ham smelled strongly of alcohol, had bloodshot eyes and slurred speech. Tr. p. 100. Ham failed several field sobriety tests, had to "fumble" through her purse in order to retrieve her license and registration and stumbled and almost fell back onto her car at the scene. Tr. p. 72–75. Based on Officer Hatfield's prior observations of intoxicated individuals, he concluded that Ham was intoxicated when he stopped Ham. Tr. p. 82, 84.

In light of such evidence establishing Ham's guilt, we conclude that a reasonable jury could not properly have acquitted Ham and would have rendered a guilty verdict even if the erroneous instruction had not been given. While we condemn the instruction that pertained to Ham's refusal to submit to the chemical test and urge trial courts throughout the State to discontinue the use of such an instruction, we deem the error harmless in these circumstances. Thus, we conclude that Ham's conviction may stand.

The judgment of the trial court is affirmed.

FRIEDLANDER, J., concurs.

BAILEY, J., concurs in result with opinion.

---

**3.** We simply cannot agree with our colleague's view that *Dill* is distinguishable from the circumstances in the instant case. To be sure, the dissent makes the point that the court in *Dill* provides that evidence of flight may only be admitted into evidence under certain circumstances, while evidence of the refusal to submit to a chemical test is "admissible as evidence at any proceeding under Indiana Code section 9–30–5." *Op.* at 1158. However, as we stated above, the *Dill* court specifically condemned the giving of the flight *instruction* for the reason that it had the potential to mislead, it unnecessarily emphasized certain evidence, and was confusing. *Dill*, 741 N.E.2d at 1232. Similarly, while the refusal to submit to the test is admissible to establish that a defendant refused to take the test as stated by this court in *Stoltmann*, instructing the jury that such a refusal amounts to evidence of intoxication is erroneous for the same reasons that our supreme court found the flight instruction to be error in *Dill*.

As an aside, while the author of this opinion acknowledges the stance originally taken in *Hurt* in 1990—that a defendant's refusal to submit to a chemical test could be considered as evidence of guilt—one of the few benefits of growing older is the ability to see one's own previous mistakes.

BAILEY, Judge, concurring in result.

I concur in the majority's determination that the jury properly convicted Ham of operating a vehicle while intoxicated, a Class C misdemeanor.[4] However, I disagree with the majority's conclusion that the trial court abused its discretion by instructing the jury that "a [d]efendant's refusal to submit to a chemical test may be considered as evidence of intoxication." Tr. at 145.

Indiana's implied consent law, i.e., Indiana Code Section 9–30–6–1, provides that "[a] person who operates a vehicle impliedly consents to submit to the chemical test provisions of this chapter as a condition of operating a vehicle in Indiana." Pursuant to Indiana Code Section 9–30–6–2(d), "[a] person must submit to each chemical test offered by a law enforcement officer in order to comply with the implied consent provisions of this chapter." In addition, Indiana Code Section 9–30–6–3(b) provides that "[a]t any proceeding under ... IC 9–30–5 ..., a person's refusal to submit to a chemical test is admissible into evidence."

In the present case, because Ham was charged with and tried for operating a vehicle while intoxicated, pursuant to Indiana Code Section 9–30–5–2(a), evidence that she refused to consent to a chemical test was clearly admissible at her trial. See Ind.Code § 9–30–6–3(b). However, the question before us is whether the trial court properly instructed the jury that Ham's refusal to submit to the chemical test may be considered as evidence of her intoxication. Although this Court has never addressed the propriety of this particular instruction, we have considered whether the trial court properly instructed the jury that a defendant's refusal to submit to a chemical test may be considered as evidence of the defendant's guilt.

In *Hurt v. State*, 553 N.E.2d 1243, 1249 (Ind.Ct.App.1990), for example, the defendant challenged the propriety of a jury instruction, which provided that "[a] defendant's refusal to submit to a chemical test may be considered as evidence of the defendant's guilt," on the basis that such instruction was confusing or misleading. Writing on behalf of the majority, Judge Baker noted that "[t]he use of the word 'guilt,' taken in the context of all the instructions, was not confusing, nor was the instruction otherwise impermissible." *Id.* Accordingly, the *Hurt* court held that the trial court had not abused its discretion by giving the "evidence of guilt" instruction. *Id.*

Similarly, in *Luckhart v. State*, 780 N.E.2d 1165, 1168 (Ind.Ct.App.2003), a different panel of this Court held that a jury instruction, which provided that "[t]he defendant's refusal to submit to a chemical test for intoxication may be considered as evidence of [the defendant's] guilt of driving while intoxicated" was not misleading and, therefore, did not constitute an abuse of discretion. In so holding, however, the *Luckhart* court cautioned that "[i]t might have been more accurate for the trial court to have instructed the jury that [the defendant's] refusal to take a chemical breath

---

4. Indiana Code Section 9–30–5–2 provides that "a person who operates a vehicle while intoxicated commits a Class C misdemeanor." Indiana Code Section 9–13–2–86 defines "intoxicated" as:
 under the influence of:
 (1) alcohol;
 (2) a controlled substance (as defined in IC 35–48–1);
 (3) a drug other than alcohol or a controlled substance; or
 (4) a combination of alcohol, controlled substances, or drugs;
 so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties.

test was evidence of his intoxication rather than evidence of his guilt of the offense of driving while intoxicated, as there is no connection between his refusal to take the test and his operation of a vehicle." *Id.*

By contrast, in *Stoltmann v. State,* 793 N.E.2d 275, 280 (Ind.Ct.App.2003), yet another panel of this Court determined that the challenged jury instruction—which provided that "[a] defendant's refusal to submit to a chemical test may be considered as evidence of the defendant's guilt"—was erroneous. In particular, the *Stoltmann* court noted that:

> While [the defendant's] refusal to take the chemical breath test was admissible into evidence, see Ind.Code § 9–30–6–3(b), the challenged instruction unduly emphasizes its importance. Furthermore, the instruction confuses and misleads the jury by permitting it to infer that the refusal is sufficient to establish all the elements of the offense of operat-

ing a vehicle while intoxicated, when, at best, it establishes only that he refused to take the test.

*Id.*[5]

The *Stoltmann* court relied upon our supreme court's holding in *Dill v. State,* 741 N.E.2d 1230, 1232 (Ind.2001), wherein the Court rejected a flight instruction as confusing, placing undue emphasis on certain evidence, and misleading. In *Dill,* the instruction at issue informed the jury that flight and other actions calculated to hide a crime, though not proof of guilt, are evidence of consciousness of guilt and are circumstances which may be considered by the jury along with other evidence. *Id.* The *Dill* court held that:

> This instruction is inherently contradictory because it simultaneously informs the jury that a person's flight after the commission of a crime is "not proof of guilt" but yet is "evidence of consciousness of guilt" and "may be consid-

5. I disagree that a defendant's refusal to submit to a chemical test only establishes that he or she refused to take the test. Police officers may not ask everybody to submit to a chemical test. Rather, the provisions of the Implied Consent law only apply where the officer has probable cause to believe that a person has committed an offense such as operating a vehicle while intoxicated. *See* Ind.Code § 9–30–6–2(a); *see also Dalton v. State,* 773 N.E.2d 332, 334 (Ind.Ct.App.2002), *trans. denied.* A law enforcement officer has probable cause to offer a chemical test where the officer has knowledge of facts and circumstances that would lead a reasonably prudent person to believe that the crime of operating a vehicle while intoxicated has been committed. *Gibson v. State,* 518 N.E.2d 1132, 1136 (Ind.Ct.App.1988), *trans. denied.*

In the present case, the evidence reveals that Officer Hatfield saw Ham drive her car left of center approximately four times and noticed that she was not wearing a seatbelt. When Officer Hatfield initiated a traffic stop, he smelled "an odor of intoxicating beverages" emanating from Ham's vehicle. Tr. at 72. Ham "fumbled through [her purse] for a short

time" before producing her driver's license and, when Officer Hatfield asked her to get out of the vehicle, she stumbled and "almost fell back to the vehicle." *Id.* Subsequently, Ham refused to take a preliminary breath test, failed the "horizontal gaze and nystagmus test," and refused to participate in any other field sobriety test. Tr. at 75. Officer Hatfield also noticed that Ham's eyes were glassy and bloodshot and her speech was broken and slurred. The fact that Ham smelled strongly of alcohol, standing alone, provided Officer Hatfield with sufficient probable cause to at least offer her a chemical test. *See, e.g., Dalton,* 773 N.E.2d at 334; *see also Jellison v. State,* 656 N.E.2d 532, 534 (Ind.Ct.App.1995) (noting that probable cause requires only the probability that criminal activity had occurred). Moreover, the totality of the circumstances presented here provided Officer Hatfield with sufficient evidence that Ham may have operated her vehicle while under the influence of some type of a controlled substance. *See, e.g., id.* Thus, because Officer Hatfield had probable cause to offer the chemical test, Ham's refusal to submit to such test constituted a violation of the Implied Consent law.

ered...." This flight instruction is confusing.

Flight and related conduct *may be considered* by a jury in determining a defendant's guilt. However, although evidence of flight may, under appropriate circumstances, be relevant, admissible, and a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence. To the contrary, instructions that unnecessarily emphasize one particular evidentiary fact, witness, or phase of the case have long been disapproved. We find no reasonable grounds in this case to justify focusing the jury's attention on the evidence of flight.

*Id.* The Court further held that the challenged instruction was misleading because:

[I]t is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses. Nor is it true as an accepted axiom of criminal law that "the wicked flee when no man pursueth; but the righteous are bold as a lion." Innocent men sometimes hesitate to confront a jury,—not necessarily because they fear that the jury will not protect them, but because they do not wish their names to appear in connection with criminal acts, are humiliated at being obliged to incur the popular odium of an arrest and trial, or because they do not wish to be put to the annoyance or expense of defending themselves.

*Id.* at 1233 (quoting *Alberty v. United States,* 162 U.S. 499, 511, 16 S.Ct. 864, 40 L.Ed. 1051 (1896)).

However, our supreme court's decision in *Dill* is distinguishable from the case, and instruction, at bar. First, the refusal to consent instruction at issue in the present case is not inherently contradictory;

rather, it clearly and unambiguously provides that a defendant's refusal to submit to a chemical test may be considered as evidence of intoxication. Second, while evidence of flight may only be admitted into evidence under certain circumstances, evidence of a defendant's refusal to submit to a chemical test is statutorily admissible as evidence at any proceeding under Indiana Code Section 9–30–5.

Further, the refusal to consent instruction is not misleading. Unlike in the flight context, where innocent people may flee from a crime scene for fear of being falsely apprehended or because of an unwillingness to appear as witnesses, it is rare that a defendant exercising his or her driving privileges would have a legitimate reason to refuse to submit to a chemical test for the detection of alcohol in the body—especially where such submission is statutorily mandated. Instead, I believe that a defendant's refusal to submit to a chemical test provides an inference that he or she consumed alcohol within the relevant time frame. As such, the refusal to consent instruction in dispute is not confusing or misleading.

Moreover, the refusal to consent instruction, which was given in this case, does not place undue emphasis on certain evidence. *See, e.g., Ludy v. State,* 784 N.E.2d 459, 461 (Ind.2003) (noting that instructions that needlessly emphasize a particular witness, evidentiary fact or phase of the case have long been disapproved). Rather, it assists the jury in understanding the relevance of Ham's refusal. The purpose of jury instructions is to inform the jury of the law applicable to the facts, without misleading the jury, and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. *See Dill,* 741 N.E.2d at 1232. Because the refusal to consent instruction in dispute provides guidance to the jury regarding the rela-

tionship of the law to the facts on an element of the offense, i.e., intoxication, the trial court did not abuse its discretion by giving it to the jury.[6] *See, e.g., Whitney v. State,* 750 N.E.2d 342, 344 (Ind. 2001) (noting that it is not improper to give an instruction where, as here, the instruction is supported by the evidence in the record, is a proper statement of the law, and it is not covered by other instructions).

For these reasons, I concur in result with the majority opinion.

**6.** It is important to note that the trial court's final instructions also instructed the jury that Ham is presumed to be innocent and that to overcome the presumption of innocence, the State was required to prove Ham guilty of "every essential element of the crime charged beyond a reasonable doubt." Tr. at 145. The trial court's instructions further informed the jury that it was the exclusive judge of the evidence, including the weight given to each item of evidence. *Id.*